Good morning. This is the time set for oral argument in the case of Cook v. Ryan. I will ask whether Judge Graber can hear and see. Yes, I can. Thank you, Judge O'Sullivan. Judge Callahan? Yes, perfect. Mr. Meehan? Yes, Your Honor. And Mr. Catani? Yes, Your Honor. Very well. Mr. Meehan, you may proceed. Thank you, Your Honor. Good morning, and may it please the Court. I will endeavor to reserve three minutes of my time for rebuttal. So just watch the clock. That's why I use the word endeavor, Your Honor. Very good. The question here is whether Martinez intended for the district courts to decide whether somebody like Cook, who's never had the full opportunity to investigate and present a mitigation claim to a sentencer, would have his claim of ineffectiveness of counsel resolved essentially on the merits and on a paper record, rather than to have sort of a threshold determination of whether he had a claim that the Martinez court called substantial, which is to say not a claim that he would necessarily succeed on on the merits. And we submit that the answer is no for three reasons. First, if the Martinez court had intended for substantial to be the – to be applied in the manner that the district court did, there would have been no need for a Martinez threshold standard, because what the district judge did here was to decide that Cook could not prevail, that he could not succeed, not that he had a colorable claim, not that he had a claim that had some merit. And therefore, it would not have been necessary for the – for the Martinez court to – to have interposed that between taking up a Rule 60 motion or a claim of ineffectiveness of post-conviction counsel and the merits of the claim itself. Second, the Court, I submit, did this, adopted this threshold test because it saw a problem that it needed to correct. As it said in the Martinez opinion, we're making a special rule, an exception to Coleman, because we're concerned about the bedrock principle of effectiveness of counsel, and we're concerned that no – that there can be circumstances under which no court will have taken up a claim of ineffectiveness of trial counsel if the post-conviction counsel has been ineffective. And that – But that isn't – counsel, that isn't the case here. The ineffective assistance claim was litigated in State court, wasn't it? Very, very, very, very, very ineffectively, Your Honor. The post-conviction counsel was deficient in pleading the claim. Well, I understand that you're saying that it wasn't litigated as well as it should have been, but doesn't Martinez limit itself to those situations in which there was no opportunity at all? Your Honor, I don't read Martinez to say that. I think Martinez spoke to the issue of whether counsel had been ineffective. And if counsel was ineffective, if – before Martinez was decided, if we had constitutionally ineffective counsel, that would have been cause to allow the district court to entertain a habeas petition. And the – and the Martinez court talked about ineffectiveness of counsel. And I think it intended not to simply say that it was never raised. As a matter of fact, Martinez talked about two different circumstances, A, where there was never any attorney that was afforded the petition in a State post-conviction proceeding, and, B, whether that attorney had been ineffective. And so, as I said, this – this counsel was ineffective in pleading it, even though he was given two chances to do so. In preparing it, he did not – he did not seek out any of the mitigation evidence that we have now. In presenting it, he did not ask questions of the trial counsel, he did not ask questions of his client about things that were important to this, and he finally was ineffective in failing to perfect it to get the ruling of the – of the trial court into a form that could be final and therefore appealable. And therefore – I have – I have an issue about reaching the counsel that represented Mr. Cook before he took on his own representation. Yes. Ferreira is sort of the elephant in the room here for me on that issue. And you have a lawyer, I guess, that represented Mr. Cook for seven months, did – was able to – did – had two applications done, was able to have a hearing on the competency, and then Mr. Cook chose to represent himself. And from my understanding of this, the Ferreira, you know, that's all been determined, so he can't really – you know, he was rightfully allowed to represent himself. You know, why isn't any – you know, how can that pretrial representation be effective when we're talking about – Mr. Cook singularly had within his mind – he knew what had happened in his childhood. He made a strategic decision as his own counsel in his representation where he's held – you know, where he's allowed to make those decisions and said, I don't want to – you know, I don't want to talk about that. Give me the death penalty. You know, how can pretrial conferences – how can pretrial – the pretrial attorney's performance be ineffective? Your Honor, let me address what I think are three points in your question. Number one, it is very clear under prevailing standards that trial counsel has an obligation to begin investigating and gathering a mitigation case immediately for, among other things, presentation to the prosecutor, which was, of course, an important issue in this case. Number two, let's suppose for the purpose of this question that instead of Mr. Cook representing himself, a brand-new lawyer had taken over the case just before the trial, which is approximately what happened here, and then has to be prepared to present a mitigation case in the sentencing phase. That lawyer is going to be extremely prejudiced and is not going to be able to present that case. Number three – Do you presume prejudice, though, or must you still show it in that circumstance? Well, I think we have to show it, but, Your Honor, I think that we have, at least for the threshold of Martinez, definitely done that. Well, but Mr. Cook said – Mr. Cook didn't want to present any of that. Like in Landrigan, there – you know, they said that he couldn't show prejudice because Landrigan didn't want those witnesses called. And then you also have another situation here, which is a little bit unique to the facts in this case. The judge that actually sentenced him knows what this evidence is and says it wouldn't have made any difference. So how could he show prejudice? Your Honor, again, there's two points here. This case is not at all like Landrigan. In Landrigan, there was an exchange, a very extensive exchange, in which Landrigan was told what the mitigation evidence would be and said that he did not want to present it. In this case, Mr. Cook, after he was convicted, told the court, number one, my head is screwed up considerably. Number two, I have mental health problems. Number three, I need an expert to help me put together a mitigation case. And the judge said no. When it came time for the sentencing for the mitigation hearing, the judge said, Mr. Cook, do you have any evidence to present? And all he said, Your Honor, was not at this time, which is one of the reasons that we submit that PCR counsel was ineffective and why we need the right to develop a record here, because the reason that he did it certainly could very well have been, probably was, that he had nothing to present. So Landrigan is really not the same case as this case. And as far as the district court, excuse me, the trial court is concerned, Your Honor, there are several reasons why that should not figure. Number one, the trial court in the 2010 postconviction proceeding was hearing a completely different State law issue, and that was newly discovered evidence. The trial court was not applying a Strickland standard or was not purporting to do an ineffectiveness of counsel. Number two, the trial court, to the extent that it was appropriate for it to consider evidence on the merits, and that, we submit, is not appropriate because this was in the trial court in the postconviction, it was a summary proceeding to determine whether hearings should be conducted, just like the Martinez case here, was applying a filter that is absolutely unconstitutional, and that is he would not consider any mitigating evidence unless he thought that there was a causal nexus between the mitigating evidence and the crime. Number three — Aren't you asking us, though, to create a situation? Because you don't even come up with anything until 2010. You know, essentially, 25 years after the crime has, then suddenly all of these things about Mr. Cook's childhood, which he went through his childhood, so he knows something about it, suddenly it's all here. So I don't know why we're not, you know, why we're not setting out the perfect thing to say, well, just ask to represent yourself, then if it doesn't go well, don't tell anyone about what happened to you, and then 25 years later, when you have an execution date set, then suddenly tell people you had a bad childhood, and then relate it back. I mean — Your Honor — That — that — there's something about that that is problematic. Let's remember that what we're talking about is the development of a mitigation case that involved his father, when he was an infant, burning him on the penis with cigarettes and beating him. His various father, grandfather, stepfather, brothers, sisters, boys home, people were sexually abusing him, things that sometimes are very, very repressed. And then let's remember that at the time that he did take over his own representation, he did have, as he told the Court, mental health problems. And as far as it being developed in 2010, attempts were made in the post-conviction proceeding to do it, except ineffectively. Attempts were made at the district court level for the appointment of investigative and expert assistance to develop a mitigation case, but because of the conclusion — Well, but it was never — but the exact things that you're saying were ineffective now weren't what was being asked for previously when they were asking for money. If you look at what that request said, it didn't say anything about what you're asking — what you're saying should have been done before. Your Honor, if you looked at the record, I'll have to defer to you, but my recollection of the motion that I filed was for the necessary funds, investigative assistance and expertise to develop a full-blown mitigation case, because we do — Counsel, you have indicated that notwithstanding the fact that he elected to represent himself, somehow or other he's entitled to other presumptions here. It seems to me that you're asking us to ignore Feretta. Feretta, does it not, establishes the rule that once you elect to represent yourself, you take the consequences of your own representation. But that's of your own representation. But that's of your own representation, Your Honor. And at that point, he had nothing to work with and therefore chose not to put on evidence. And I submit that the issue that you and I are discussing right now is a really good example of why the district court erred in saying we're going to find against Mr. Cook on the Rule 60 motion because he cannot ensure entitlement to relief. What's supposed to happen is, does this claim have some merit? It is a certificate of appealability standard. It is, is the claim frivolous? And that, is he going to prevail on the merits? And then you go back and have a hearing that says, well, why did you do that? In Landrigan, he was asked or he was told there was a record as to why did you do that. Here there was not. Mr. Mann, you're down to about three minutes. You may wish to reserve. I would like to do that, Your Honor. Thank you. You may do so. We'll hear from the State. May it please the Court. Kent Catani representing Respondents in this matter. I agree with the points the Court has made regarding self-representation. It effectively renders moot the issue in this case. By choosing to represent himself, I believe the quote from the footnote in Ferretta claims may be available to a defendant. Ineffective assistance of counsel is not one of them. And it makes sense because it would be extremely unfair to try to hypothesize what pretrial counsel would or would not have done had he remained on the case. And as Judge Callahan pointed out, there was investigation that was done ahead of time with two mental health evaluations. And we're left with complete speculation as to what an attorney would or would not have done. Moreover. Mr. Catani, you're saying Ferretta's dispositive of this appeal. But can you conceive of any circumstances in which Martinez would apply where a defendant does represent himself? Or is every time a defendant represents himself, anything that happened up until that point, Martinez couldn't touch? It seems to me the focus really is on whether the Ferretta inquiry was adequate. And what he's essentially saying is something more should have been done before I was allowed to represent myself. And that's an issue that was resolved on the merits both in state court and in federal court. So it seems to me that that would be where that question would lead us. Is there something more that's required before we allow someone to represent themselves? Well, but I guess what I'm saying is. If there were. Go ahead. No, go ahead. Judge Graber. If there were. This is hypothetical only. But if there were the type of Ferretta claim that you're talking about where someone says my choice wasn't voluntary because I had an incompetent lawyer and I'm better than an incompetent lawyer, but I still, it was still terrible. Which is really a kind of voluntariness claim. And hypothetically, if there had not been an opportunity to litigate that, would Martinez apply by analogy? I know that's not this case, but I'm just trying to explore whether your position is absolute that there can never be a Martinez kind of claim in a Ferretta situation. Well, I think there could be. It's hard for me to hypothesize what exactly. It would be a very limited inquiry. And that's essentially what happened in this case. The trial court granted an evidentiary hearing. He was given an opportunity to explain what it is that pretrial counsel should or should not have done. I have a hard time hypothesizing if counsel did absolutely nothing and he's, and the defendant is at the point where he has to go forward without the benefit of any investigative resources. I suppose there, we would still need to have some sort of allegation that shows what was unavailable to him. And it's difficult. It would be an extremely high hurdle for a defendant, particularly in this situation, where the allegation is that evidence regarding, relating to his own childhood and his own background should have been presented. And that's something that is clearly, it's something that he clearly knew about and could have presented. So it's hard to hypothesize a scenario whereby a pretrial defense counsel's ineffectiveness somehow translates to a viable claim for relief when the defendant knows the information and chooses not to present it. So I guess a long-winded answer here, but in terms of when you couple Feretta with Mr. Cook's decision not to present any mitigation, then I would find it hard to hypothesize a scenario where I think a defendant would be entitled to any further hearing. And as the Court has pointed out, in this case, he was allowed to develop in his third postconviction proceeding a claim. He alleged that there was newly discovered evidence in terms of the PTSD diagnosis. And this is the evidence that he's claiming should have been presented at the original litigation. And the trial judge in this case has said that would not have changed the outcome, that would not have changed his own sentencing decision. And again, this is the very same judge who conducted the sentencing proceeding and imposed sentence. So I think it's an extremely high hurdle that has not been surmounted in terms of any kind of a prejudice analysis where we have the trial judge saying that this would not have made a difference. And certainly that's a ruling that's entitled to deference. There's been an assertion that he was denied an additional mental health evaluation prior to sentencing, and my recollection is that is correct, but I think it was in the context of the Court asking what he anticipated, what Mr. Cook anticipated that would show, and in the context of the Court saying, I've watched your performance here and you've really done a fairly good job of representing yourself. And we have so it's not a complete vacuum. You can look at the transcripts and see that this was someone who was competent and who was able to handle the mechanics of representing himself. I disagree with the assertion that Martinez necessarily requires an evidentiary hearing if there's, that it's somehow a lesser standard. My reading of Martinez is that it suggests that there has to be a significant claim of ineffective assistance. And certainly the Court can look at what's been alleged and can make an assessment of whether a defendant would have satisfied the prejudice prong, particularly given what happened in the third post-conviction proceeding. And finally, I think it's also important to note that the reason the claim was procedurally defaulted in Federal court was post-conviction counsel's failure to properly appeal from the decision of the trial court, at least certain aspects of the claim of ineffective assistance of counsel. The only ---- So do you agree with the district court that Martinez doesn't apply to the motion for rehearing Stateship Cook's PCR proceeding? Well, I agree that the Court ---- Do you agree? I do agree. I believe the United States Supreme Court intended that Martinez be a limited exception. And I think in this case, this is different from Martinez. There was an opportunity for an evidentiary hearing in State court. The claim of ineffective assistance was alleged.  And the only reason the claim was procedurally defaulted was this failure to file a petition for rehearing in State court. But had that been done, the procedure ---- the correctly ---- the properly exhausted claim would have simply been these allegations that really have no ---- that are very different from what's being raised today. So the claim that would not have been procedurally defaulted had to do with, I believe, cross-examining the co-defendant, Mr. Matske. And I've forgotten the other aspects, but they were very limited. It certainly was not this expanded claim relating to PTSD. So I think in that context, I don't think this approach is the standard that the Court has indicated should apply in Martinez. So from your perspective, is it your position that basically Ferretta's dispositive of it, this, and so we wouldn't even get into the Phelps factors? Well, I certainly think that Ferretta, combined with Landrigan, is dispositive, that he did choose to represent himself. There's really no indication. Given the fact that pretrial counsel did, in fact, obtain two mental health evaluations prior to trial, I think it is dispositive of a claim of ineffective assistance of counsel. And I think Landrigan is dispositive of whether additional mitigation would have been presented. There's certainly nothing that prevented him from, Mr. Cook, from offering his own childhood as a mitigating circumstance, and it was clear that he did not want to do  that. So I guess I do agree that the issue that's been raised is moot, or you could say it's dispositive either way. Well, if he, if Mr. Cook is in a position, obviously, in representing himself, he gets to make the strategic decisions or the, you know, he gets to decide how he wants to proceed in the penalty phase. And so you're saying that, I mean, he basically made a decision that presenting mitigating evidence wouldn't have made a difference, and he said you should give me the death penalty. So that sort of subsumes his claim that had there been anything, he would have presented it? Is that, is that what you're saying? I agree with that. I mean, even though in hindsight, in hindsight, that doesn't, you know, I mean, in hindsight, it didn't work. Well, or I guess it did work. He asked for the death penalty, and he got it. I don't. All right. The only minor point of disagreement, I'm not really disagreeing, but I don't know that we have to decide what was going on in his mind, whether it was because I don't think it would work or whether it's because I simply don't want to present mitigation evidence. But I think under Landrigan, it doesn't matter. He had the opportunity to do it. He was aware that he could present mitigation. And so even if we assume that, well, and we know that it wouldn't have changed it given what the PCR court has told us in the third PCR, but even if he'd made the decision that there's some really compelling evidence, but I just don't want to present the evidence, I think under Landrigan, that would preclude this claim. Again, we're shifting the blame to defense counsel, pretrial defense counsel, for something that Mr. Landrigan decided on his own to do at the time of sentencing. Just one other side note on that. Mr. Cattani. Sure. Mr. Cattani, to what extent do our conclusions in previous iterations of the appeals that we've had constitute a, let's say, a precedent with respect to ineffective assistance of counsel? As you recall, in prior iterations, we've dealt with that issue. Is that binding with respect to this case at this time, or is that subject to reopening somehow? Well, I think the Court did. The Court found that the claim of ineffective assistance was procedurally defaulted. It seems to me it also addressed, discussed, I've forgotten the exact language that was used. Given that it's raised in a different context, I'm not sure I would argue that you couldn't look at it under Martinez. Given that the primary ruling was it's procedurally defaulted and to the extent there was a, that Martinez would allow you to reopen it, I'm not sure the prior pronouncements regarding the merits of the ineffectiveness claim would necessarily control, although I think there's certainly something that should be considered. Because, again, this is different from Martinez, where in Martinez nothing was presented at postconviction. An attorney just filed a notice, initially filed a notice, but then said, I can't find any colorable claims. So there was nothing before the Court. Here we have the complete, we had an evidentiary hearing. And certainly this, the only thing this Court would have been looking at, as I mentioned earlier, would have been the allegations that were presented to the district court and to the trial court in the first instance. So I think it, I think this Court's assessment of the merits of what was raised below is certainly, when I'm saying below, what was raised in the district court and what was alleged as cause to overcome the procedural default, I think that is controlling. To the extent, and I think this is now very different, this is an expanded claim that I think is very different than what was alleged as procedural default. And I think the more correct inquiry is, should the Court have excused the procedural default at the time it was raised in district court? And what it would have been excusing would have only led to consideration of this claim, of the claim that this Court has found to be meritless. Sorry for a long-winded answer on that. I think the only other point I wanted to make was that Mr. Cook also had advisory counsel throughout, throughout trial and sentencing. And there was no suggestion that, I believe he was even given the opportunity to change advisory counsel, and he indicated that he was comfortable with advisory counsel. But, like, advisory counsel, whether he had it or not, I mean, if you choose to represent yourself, you're still responsible, right? Right. Right. I'm just trying to, in terms of the ---- So we're not going to get to effectiveness of an advisory counsel, are we? No. No. And all I'm trying to suggest is this wasn't a situation where he was, he was railroaded into representing himself. And I guess it's a point that I did not need to make. Well, I guess, I mean, I think what Judge O'Scanlan was talking about, we really can't revisit the appropriateness of the Feretta part of it. It's already been determined that's all behind us, right? Right. And I completely agree with that. That he properly understood what he was doing, and that was okay, right? Right. That's all been litigated. And I, I, and that's why I believe this is really more properly viewed as an improper or successive petition, because I think what the, the real nub of the argument that's being made is that there should have been a different, there should have been a more thorough colloquy before I was allowed to represent myself. And, and I don't think, that, that claim was addressed on the merits. So I, I, I think that, that holding by this Court is dispositive. And so I, I think this is just a poor vehicle to raise any, any type of Martinez claim. And that's all I have, if there are no further questions. No further questions. Thank you, Mr. Katani. Thank you. Mr. Katani. Mr. Meehan, you have some reserve time. Yes, Your Honor. To respond to your question, what this panel did in the previous appeal related to ineffectiveness of counsel in other ways, and, and your opinion, your first opinion and the district court acknowledged it, was that this particular one was not reached. And I don't know why Mr. Katani says that there is anything related to the colloquy about waiving counsel, because that's clearly not part of what we're talking about here. Ferretta is only of help if there is no colorable claim that the trial counsel didn't do what he should have done in a very major aspect. Now, when you say, when you say trial counsel, are you talking pretrial counsel before his representation? Yes, Your Honor, I am. That's true. Okay. That's true. Because he's, because Mr. Cook is trial counsel. I'll accept that terminology, Your Honor. Okay. But this case is not anything remotely like Landrigan. Mr. Katani is riding a bad horse on that. And I'm going to say this, because in Landrigan, we had the sort of record about what did he do and why did he do it. Here, there is no record that Mr. Cook chose to not put in any mitigating evidence. He tried to get an expert. He was in jail. He could not go out and find witnesses. And so there's a far cry, if the Court please, between a mitigation hearing where Mr. Cook stands up and says, I had a bad childhood, versus bringing people in to testify that Cook was sexually abused by all of these people. Mr. Katani talks about two mental health competency reports, which was just that competency and not mitigation. And all that's referred to, just for one example, all that's referred to in those, in one of them was that there may have been sexual abuse in the boy's home. The mitigation investigation showed that he, his mother used to beat and fondle him. His grandfather abused him and his brother, his sister. His stepfather abused him. A step-parent abused him. Barrett, the fellow who was in the California home, had enforcers who gang-raped him. This is the sort of thing that Mr. Cook was not in a position to develop. This is the sort of thing I urge the Court, just as a shorthand reference for my argument, to remember the Dietrich opinion which just came out. It talks all about the need for a thorough, complete mitigation investigation that starts right away. Mr. Cook, I submit, is entitled to have a proper adjudication of his claim because if you apply the certificate of appealability test that Martinez says, I don't have to, did not have to, shouldn't have had to convince the district court that Cook was going to prevail. I don't have to, shouldn't have to, under the certificate of appealability rules to convince this Court, any or all of this Court, that he has to prevail. Rather, is there a case which has never been properly developed, which is excused by the ineffectiveness of post-conviction counsel, and which is more than a frivolous claim. It's a colorable claim. This is not a situation where it is, where Martinez intended to take the normal, develop a record, do discovery if one is necessary, have an evidentiary hearing if it's a claim that could have some merit, and turn it into a summary judgment on the papers. That's not what Martinez intended, but that's what happened here. All right. Thank you very much, Mr. Meehan. Your time has expired. Before we cut off San Francisco and Phoenix, I just want to say on behalf of the Court how much we appreciate the technical support from Kwame Copeland in San Francisco, from Mark Knoll here in Chicago, and the technical helpers in other parts of the circuit. This was quite an achievement to have a five-way hookup that went so well. Thank you very much. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Graber, Callahan